opinion. Kern, Judge: The decision of this case turns upon the construction to be given to the contract of October 30, 1924, which is set out in its entirety in our findings. It is petitioner’s contention that it became the equitable owner of the bonds held in trust pursuant to that contract in 1931, and therefore, the market value of those bonds was taxable income to it in that year rather than in 1944, when William Gauss died. In the altema-tive, petitioner contends that it should have accrued its regular charges for the care of William commencing with the date of his admission to petitioner’s institution and should have charged the excess of such accruals over the income from the bonds actually received, to the corpus of the bonds held by the trustee. ■ Respondent contends that, since petitioner was not entitled to receive the bonds from the trustee until William’s death in 1944, the fair market value of the bonds on that date was taxable income to petitioner in 1944 and in no other year. The unusual arrangement made by petitioner Victor Gauss and the bank, as trustee, must be construed as a whole and in the light of all the facts disclosed by the record. In 1924 Victor Gauss was approaching the age of three score years and ten. He was a man of limited financial means. His wife and three of his children had died from tuberculosis. His one surviving child was a son, who was so completely defective mentally and physically that he would need specialized care throughout his life. Victor Gauss felt that petitioner could give to his son such care. His great concern was to arrange for the care of his son after his own death and to arrange for the payment of this care with the. limited funds which he had for this purpose. Petitioner was willing to furnish the care for William, but, of course, desired to be adequately compensated for its services. The contract in question covered all possible eventualities. During Victor’s life he agreed to pay to petitioner $100 per month (an amount somewhat below the usual charge made by petitioner in 1924 for the care of patients). If, during Victor’s lifetime William was withdrawn from petitioner, then Victor agreed to make additional payments to petitioner so that the total amount paid would be equivalent to $300 per month for the time William was in petitioner’s care. At the time the contract was executed Victor gave to a bank, as trustee, bonds having a fair market value of $28,000. If William died during Victor’s life, then petitioner was to receive from the trustee, in addition to the $100 per month paid by Victor, bonds of the market value of $5,000. If Victor should predecease William, then petitioner was to receive, in lieu of the $100 per month paid by Victor, the income from the bonds held in trust, and upon the death of William (after the death of Victor) was to receive these bonds from the trustee as “a reward and proper compensation * * * for having rendered care and treatment to the said William during his lifetime.” If, after Victor’s death, it should be determined that petitioner mistreated William or willfully neglected him, then William was to be transferred to another institution, which, if it cared for William for six months before his death, would be entitled to receive the bonds. Thus, after Victor’s death petitioner was obligated by this contract to furnish care and attention to William during his life and was entitled to receive as compensation the current income from the bonds put in trust by Victor to accomplish the purposes of the contract and to receive the bonds themselves (the corpus of the trust) at the end of William’s lifetime if William was being cared for by petitioner at that time. While petitioner had certain rights under the contract of 1924 contingent upon its furnishing proper care to William, it is apparent that the.real beneficiary of the trust referred to in the contract and created contemporaneously with its execution was Victor’s defective son William. It was primarily for his benefit that the trust was created. The- purpose of the trust was to provide and insure proper care for William during his lifetime. It was contemplated that petitioner would furnish this care, but the possibility was also contemplated that petitioner could not, or would not, furnish the proper care for William. The income of the trust during William’s life was to be expended for William’s benefit. It was to be paid to petitioner or any other institution caring for William. Since this income would not, in all probability, be sufficient to pay charges usually made for institutional care, it was provided, for the purpose of inducing petitioner or another similar institution to furnish proper care to William at a rate of compensation below the customary charges, that upon William’s death the corpus of the trust was to be distributed either to petitioner or to such other institution which had cared for William for six months prior to his death. Petitioner’s principal contention is that its rights after the death of Victor in 1931 were analogous to those of a vendee in situations where the possession of or the legal title to property is placed in escrow for the purpose of securing the payment of the purchase price, and it points out authorities holding, for tax purposes, that the vendee obtains equitable and beneficial ownership of the property when it is placed in escrow, subject only to the possibility of losing that ownership upon failure to pay the purchase price agreed upon. Long v. United States, 66 Ct. Cls. 475; Moore v. Commissioner, 124 Fed. (2d) 991; De Guire v. Higgins, 159 Fed. (2d) 921; Bonham v. Commissioner, 89 Fed. (2d) 725; Philip W. McAbee, 5 T. C. 1130. Petitioner argues that upon Victor’s death it became the beneficial and equitable owner of the bonds forming the corpus of the trust, legal'title to which was held by the trustee to secure the performance of petitioner’s obligation to care for William, and that it was only subject to be divested of this ownership upon the occurrence of a condition subsequent, viz., its failure to furnish proper care to William. Therefore, petitioner concludes, it was taxable upon the fair market value of the bonds held by the trustee as income received by it in 1931, and not in 1944, the year of William’s death. We do not agree with petitioner’s argument. In our opinion, Victor did not intend by the arrangement entered into in 1924 to transfer to petitioner upon his death the beneficial ownership of the bonds forming the corpus of the trust, subject to being divested of this beneficial ownership upon the occurrence of a condition subsequent, viz., petitioner’s failure to furnish proper care to William during William’s lifetime. William was the real beneficiary of the trust; it was for the purpose of obtaining proper care for him during his lifetime and after the death of his father, that the trust was created. As compensation for its services rendered to the trust in caring for William, petitioner was to receive the current trust income; and as additional compensation and an inducement to petitioner to comply faithfully with its undertaking to care for William, even though the currently distributable compensation was less than the charges customarily made for similar services, it was provided that upon William’s death while still in petitioner’s institution, and upon the consequent termination of the trust, petitioner was to receive the trust corpus. We conclude, after an examination of the 1924 contract as a whole and in the light of all the surrounding facts, that petitioner became the beneficial owner of the bonds held by the trust only at the end of William’s life, when the trust terminated and when petitioner completed its undertaking to properly care for William during his lifetime. We are also unable to agree with petitioner’s alternative contention that the bonds constituted accrued income in years prior to 1944. In connection with this contention, petitioner suggests that it should have accrued its regular charges for the care of patients as charges for William’s care and, in so far as they would have been in excess of the trust income, this excess should have been charged to the corpus of the bonds held by the trustee. In our opinion such an accrual method was not justified under the terms of the contract. Decision will be entered for respondent.